IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
<u>Baltimore Division</u>

| | |
|---|---|
| IN RE: | * |
| | |
| GALEN ROBOTICS, INC., | * Bankr. Case No.: 25-18408-DER |
| Debtor. | * (Chapter 7) |
| *    *    *    *    *    *    * | |
| | * |
| Zvi Guttman, Trustee | |
| | |
| v. | * CONTESTED MATTER |
| | |
| Ambix Life Science Fund I, L.P. | * |
| 627 National Ave. | |
| Mountain View, CA 94043 | * |
| | |
| Internal Revenue Service | * |
| Central Lien Operations | |
| PO Box 145595 | * |
| Stop 8420G | |
| Cincinnati, OH 45250-5595 | * |

*    *    *    *    *    *    *    *    *    *    *    *    *

**MOTION FOR AUTHORITY TO SELL ASSETS**
**<u>FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS</u>**

Zvi Guttman, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of **GALEN ROBOTICS, INC.** (the "Debtor"), by and through his undersigned attorney, files this *Motion for Authority to Sell Assets Free and Clear of Liens, Claims, Encumbrances, and Interests* (the "Motion"), and in support thereof, states as follows:

**<u>Jurisdiction</u>**

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are, inter alia, 11 U.S.C. §363 and Federal Rules of Bankruptcy Procedure 2002 and 6004.

4.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).

**Background**

5.      Prepetition, the Debtor was engaged in the development and commercialization of robotic surgical technology, including the Galen ES Robotic Surgical Assistant Platform, which received FDA De Novo clearance (DEN220047).

6.      The Estate holds certain assets of value, including intellectual property, regulatory clearances and submissions, technical documentation, software and firmware, design files, physical prototypes and equipment, and associated records (collectively, the "Assets"), as more particularly described in Exhibit A to the Purchase Agreement itself attached hereto as Exhibit 1 (the "Agreement").[1]

7.    By way of further background, an unverified, but believed to be generally accurate summary of the Debtor's pre-petition operations is as follows: [2]

Galen Robotics was founded in 2016 by Bruce Lichorowic and Dave Saunders to commercialize surgical robotics technology originating from Johns Hopkins University. The company's core idea was a cooperative-control robotic platform that assists (rather than replaces) surgeons—stabilizing hand motion and enabling extremely precise microsurgical procedures.

The company positioned itself as a lower-cost alternative to large capital-intensive surgical robots, focusing initially on ENT/laryngology procedures, with plans to expand into other specialties. It developed a prototype system and moved toward FDA submission while refining a business model intended to reduce barriers to adoption. Galen raised approximately $15 million in Series A funding (oversubscribed) to complete its robot, pursue regulatory clearance, and build out commercialization capabilities. Around this time, it also expanded operations in Baltimore, received additional support from Maryland entities like TEDCO, and continued hiring and product development efforts.

During/after the COVID-19 period, the company pivoted toward a "Digital Surgery-as-a-Service" model—allowing hospitals to use the system without large upfront capital expenditures, instead paying per use. By 2023–2024, the

---

[1] The Trustee has already received a qualifying competing bid, as set forth in the purchase agreement attached to the Bid Procedures Motion as Exhibit 2. Although the enumerated assets in the purchase agreements are described differently, they are intended to capture the same group of assets—namely, assets of value related to the Galen ES Robotic Surgical Assistant Platform, including intellectual property, regulatory clearances and submissions, technical documentation, software and firmware, design files, physical prototypes and equipment, and associated records. To the extent any ambiguity exists between the asset descriptions in the agreements, the more inclusive description shall govern. Thus the "Assets" includes all of the assets described in either of the purchase agreements.

[2] This summary is provided for contextual purposes only and should not be construed as substantive or definitive.  In any event, the precise accuracy of this information is not material to the relief sought.

company showed signs of financial strain, including employee wage claims and litigation alleging unpaid compensation and multiple lawsuits and mounting liabilities.[3]

8.      An involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against Galen Robotics, Inc. on September 11, 2025. An Order for Relief was entered on October 24, 2025, and Zvi Guttman was appointed as the Chapter 7 Trustee.

9.      Shortly after his appointment, the Trustee received an offer to purchase the Assets for $10,000. The Trustee rejected this *de minimis* bid as wholly inadequate. The prospective purchaser thereafter increased its offer to $50,000. Subsequently, Altza Holdings LLC  submitted a competing bid of $75,000. The original prospective purchaser then returned with a revised offer of $80,000. At that point, the Trustee determined that the process required the structure of formal bid procedures to ensure a fair, transparent, and value-maximizing sale process for the benefit of all creditors of the Estate.

10.      The Trustee has received and negotiated a proposed purchase agreement with Galen Medical Technologies, Inc., a Delaware corporation ("GMT" or the "Stalking Horse Bidder"), for the purchase of the Assets for a purchase price of $90,000, subject to overbid and Court approval. GMT has deposited $10,000 with the Trustee as a good faith deposit, which will be applied to the purchase price at closing or refunded as provided in the Purchase Agreement.

11.      The Trustee believes that establishing an orderly bid procedure will maximize the value of the Assets for the benefit of creditors and is in the best interest of the Estate.

12.      As this Motion was being drafted, Altza raised its bid to $100,000 highlighting the need for bid procedures and an auction.

### The Agreement

13.      By this Motion, the Trustee seeks authority to sell the Assets to Galen Medical Technologies, Inc., or successor, designee, or assignee (hereinafter, the "Buyer" or the "Purchaser") or the successful bidder after Auction.

14.      The Purchaser and the Trustee have entered into the Purchase Agreement attached hereto as Exhibit 1 for the sale of the Assets to the Purchaser for **$90,000** (the "Purchase Price").

---

[3] See e.g., Exhibit 2.

15.     The sale includes substantially all of the Estate's assets. See Footnote 1.

16.     Closing is set for 15 days after entry of a final order approving the sale.

17.     The Trustee shall procure an Order from the Bankruptcy Court approving the Agreement and transferring the Assets to Buyer free and clear of liens, claims, encumbrances, and interests pursuant to Bankruptcy Code § 363(f).

18.     A copy of the Agreement is attached hereto as Exhibit 1.

19.     There is no Schedule A/B value of the Assets.

20.     No formal appraisal has been obtained.

21.     However, the Trustee has received offers from two different entities and submits that a fair price will naturally emerge through a competitive process in which multiple interested buyers, each acting in their own economic self-interest, submit independent bids.

22.     While this Motion is pending, higher offers will be considered. Indeed, the Trustee has filed a Motion seeking Court approval of bid procedures.

23.     To the best of the Trustee's knowledge, information and belief, the Purchaser has no connection with the Trustee or any creditor, and the Purchaser is a good faith Purchaser entitled to protection under 11 U.S.C. § 363(m).

### Liens, Claims, Encumbrances, Interests and Other Costs of Sale

24.     Although the Involuntary Petition provided virtually no creditor information, the Trustee has reviewed the limited records available to identify creditors and their addresses or email addresses.  The Trustee has used this information to file a creditor matrix, has requested that the Court set the claims bar date and notify creditors of the need to file a proof of claim, and continues to supplement the creditor list as additional creditors are identified.  Toward that end, the Trustee has served the notice of this sale on creditors identified through Maryland Judicial Case Search.

25.     Upon information and belief, the following may hold liens, claims, encumbrances, and interests ("Interests") against the Assets and their proposed treatment hereunder.

| Holder/Servicer of Interest | Claim Amount/ Nature of Claim | Proposed Treatment | See ¶ __ for more details |
|---|---|---|---|
| | | | |

| Internal Revenue Service (IRS) | $97,504.37<br><br>Federal Tax Lien | To be paid subject to agreement and/or 11 U.S.C. §§ 503,506, 507, 724(a) and (b), and 726 | 26 |
|---|---|---|---|
| Ambix Life Science Fund I, L.P. | Claim Amount Unknown<br><br>UCC-1 | No payment is contemplated at this time | 27-28 |

26.     The IRS did not file a Proof of Claim.  However, on September 16, 2025, the IRS filed a Notice of Federal Tax Lien in the Circuit Court for Baltimore City asserting a lien of $97,504.37.  Case No.: C-24-JG-25-012087.  The Trustee has been provided with no documentation supporting this claim and reserves all rights as to the validity, priority, extent, amount, and enforceability of the claim.  Furthermore, the IRS lien is subject to subordination under §724(b).

27.     **Ambix Life Science Fund, I L.P.**  Ambix has not filed a Proof of Claim. However, on April 1, 2024, Ambix filed a UCC-1 against the Debtor in the Delaware Dept. of State, UCC Filing Section, asserting a lien on the following:

> All of the Debtor's right, title and interest in each and all of the following, whether now existing or owned or hereafter created or acquired by the Debtor: all tangible and intangible assets of the Debtor, including without limitation all intellectual property rights including patent, trademark and copyrights, all accounts, accounts receivable, contract rights, rights to payment, chattel paper, letter of credit rights and proceeds of letters of credit, documents, securities, money and instruments, and investment property, whether held directly or through a securities intermediary, and other obligations of any kind owed to the Debtor; all deposit accounts, and all funds and amounts therein; all inventory; all equipment; all other general intangibles and other personal property of the Debtor; and all proceeds, including insurance proceeds, of any and all of the foregoing.

28.     The Trustee has been informed that Ambix never actually loaned any money to the Debtor.  The Trustee has been provided with no documentation supporting this claim and reserves all rights as to the validity, priority, extent, amount, and enforceability of the claim.

**Authority to Sell**

5

29.     Pursuant to §363(b)(1) of the Bankruptcy Code, a trustee, after notice and hearing, may use, sell or lease property of the estate other than in the ordinary course of business. Pursuant to §363(f) of the Bankruptcy Code, the trustee may sell property free and clear of any interest in such property of an entity other than the estate if (i) permitted under applicable non-bankruptcy law, (ii) the party asserting such interest consents, (iii) the interest is a lien and the purchase price for the property is greater thanthe aggregate amount of all liens on the property, (iv) the interest is the subject of a bona fide dispute, or (v) the party asserting the interest could be compelled, in a legal orequitable proceeding, to accept a money satisfaction for such interest.

30.     Section 363(f) of the Bankruptcy Code is stated in the disjunctive. Thus, it is only necessary for the Trustee to satisfy one of the five conditions of §363(f).

31.     The Trustee believes, and therefore avers, that he will be able to demonstrate that he has satisfied one or more of these conditions with respect to each and every entity claiming an interest in or lien upon the Assets and that he should be authorized to sell same free and clear of all Interests.

### Purchaser Is Entitled To The Protections Of Section 363(m)

32.     Section 363(m) of the Bankruptcy Code provides for certain protections to be provided to good faith purchasers of estate assets pursuant to § 363(b). Section 363(m) states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m)

33.     Thus, where the purchase of assets is in good faith, § 363(m) protects parties from the consequences of the reversal or modification of an authorization of sale. While the Bankruptcy Code does not define "good faith", the Fourth Circuit has held that a good faith purchaser is "one who purchases the assets for value, in good faith, and without notice of

6

adverse claims." *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1197 (7th Cir. 1978)). To constitute lack of good faith, a purchaser's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." Id. at 1024; *In re Xact Telesolutions, Inc.*, CIV.A. DKC 2005-1230, 2006 WL 66665, at *5 (D. Md. Jan. 10, 2006). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986).

34.     The Trustee requests that the Court find that the Purchaser is entitled to the protections of a good faith purchaser under § 363(m) because, among other things, the sale bears the hallmarks of an arm's-length sale and the Purchaser should be afforded the protections of a good faith purchaser. There is no evidence of fraud or collusion, the Purchaser is not an insider of the Trustee or the Debtor, as that term is defined in § 101(31) of the Bankruptcy Code, and all negotiations have been and will continue to be conducted on an arm's length, good faith basis.

## Notice

35.     The Trustee will serve this Motion, Exhibits and proposed Order as indicated in the Certificate of Service, and notice of this Motion on: (a) the United States Trustee; (b) all known creditors of the Estate; (c) all parties having filed notices of appearance; (d) all parties known to have expressed interest in the Assets; and (e) local and Federal taxing authorities.  The Trustee will further make this Motion and related documents available at https://guttman.lawyer/galen. The Trustee submits that such notice is adequate and appropriate under the circumstances.

## Waiver of Stay

36.     The sale process has been fair and closing is to take place shortly following approval of the Sale.  Accordingly, the Trustee requests that the Sale Order be made effective immediately by providing that the stay under Bankruptcy Rules 6004(h) be waived.

37.     Although Bankruptcy Rules 6004(h) and the Advisory Committee Notes are silent as to when a court should order otherwise and eliminate or reduce the fourteen (14)

day stay period, *Collier on Bankruptcy* suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY ¶ 6004.11, 6006.4 (16th ed. 2013). Waiver of these stays will allow the Sale Order approving this Sale Motion to become effective immediately upon entry on the Court's docket so that the Trustee can promptly complete the sale proposed herein.

## Conclusion and Relief Sought

38.     In the exercise of his business judgment, the Trustee believes, and therefore avers, that the proposed sale is in the best interest of the creditors of this Estate.

WHEREFORE, the Trustee moves for the entry of an Order incorporated and substantially in the form attached hereto which provides relief, including:

A.     Authorizing the Trustee to enter into the Agreement.

B.     Authorizing the Trustee to sell the Assets to the Purchaser for the Purchase Price under the Agreement on an "as is," no warranty basis, free and clear of all liens, claims, encumbrances, or interests with said liens, claims and interests, if any, to attach to the proceeds of sale, subject to a further determination as to their validity, priority or extent;

C.     Authorizing the Trustee to take any and all actions and to execute any and all documents necessary and appropriate to effectuate and consummate the terms of said sale of the Assets including without limitation, executing a Bill of Sale selling and conveying the interests of the Estate and the Debtor in and to the Assets to the Purchaser, assignee, or such other person as may be approved by the Court;

D.     Authorizing the Trustee to disburse from the proceeds of sale at or after settlement, directly or through an intermediary including an attorney's office or title company:

      i.     any costs of sale; and

      ii.     the principal and interest and other allowable charges and amounts due to any person if and to the extent the Trustee concludes that such person holds an interest or claim secured by a non-avoidable, non-subordinated, valid and perfected interest or lien on the Assets;

E.     Transferring all existing Interests (i.e., liens, claims, encumbrances, and

interests), if any, against the Assets to the proceeds of the sale with the same priority as they had against the Assets pre-sale but, upon motion or objection thereto, subject to their validity, extent, or priority and without prejudice to the rights and claims of the holder of each Interest with respect to these proceeds;

F.      Directing that all proceeds of sale not disbursed at the direction of the Trustee as authorized herein shall be turned over to and retained by the Trustee in escrow for distribution in accordance with the Bankruptcy Code and/or further Order ofthis Court;

G.      Waiving any stay pursuant to Fed. R. Bankr. Proc. 6004(h); and

H.      Granting the Trustee such other and further relief as is just and proper.

/s/ Zvi Guttman_____
Zvi Guttman (06902)
The Law Offices of Zvi Guttman, P.A.
P.O. Box 32308
Baltimore, Maryland 21282
Zvi@ZviGuttman.com
(410) 580-0500 Phone
(410) 580-0700 Fax

**Attorney for Zvi Guttman, Trustee**

## TERMS OF SALE of ASSETS OF GALEN ROBOTICS

| | |
|---|---|
| Appraisal | None |
| Scheduled Value of Assets | None |
| Purchaser | Galen Medical Technologies, Inc., a Delaware corporation or successor, designee, or assignee |
| Purchaser's relationship to any party in interest | None |
| Purchase Price | $90,000 (subject to Auction) |
| Payment Terms | Payment in full at closing. |
| Items to be paid & concessions made by the Estate. | None |
| Objections Due | June 1, 2026 plus any additional time required by Federal Bankruptcy Rules 9006(a) and (f). |
| Date/Time/Location of Hrg. | 06/15/2026 at 3:00 pm - Courtroom 9-D |
| Compensation – Trustee | In accordance with 11 U.S.C. § 326 |

### Liens/Claims/Encumbrances/Interests

| Holder/Servicer of Interest | Claim Amount/ Nature of Claim | Proposed Treatment | See ¶ __ for more details |
|---|---|---|---|
| Internal Revenue Service (IRS) | $97,504.37<br><br>Federal Tax Lien | To be paid subject to agreement and/or 11 U.S.C. §§ 503, 506, 507, 724(a) and (b), and 726 | 26 |
| Ambix Life Science Fund I, L.P. | Claim Amount Unknown<br><br>UCC-1 | No payment is contemplated at this time | 27-28 |

**The Motion may be granted and the Assets may be sold
without further notice if a timely objection is not filed**

10