## ASSET PURCHASE AGREEMENT

### Debtor: Galen Robotics Inc.
### Bankruptcy Case No. 25-18408

This Asset Purchase Agreement ("Agreement") is entered into as of the date signed below, between:

SELLER: Zvi Guttman, solely as Chapter 7 Trustee of the Estate of Galen Robotics, Inc., Case No. 25-18408, pending in the U.S. Bankruptcy Court, District of Maryland; and

BUYER: Madison Lane Ventures LLC, a Delaware Limited Liability Company, with principal address of 4112 Greenway, Baltimore, Maryland 21218.

Buyer and its principals hereby submit to the personal jurisdiction of the United States Bankruptcy Court for the District of Maryland for purposes of resolving any dispute that may arise concerning or relating to this Agreement or the sale of the Assets. Principal and funding party disclosures are provided in the accompanying Principal Disclosure Statement submitted herewith.

## **Definitions**

Bankruptcy Court means the United States Bankruptcy Court for the District of Maryland.

Code means the United States Bankruptcy Code (11 U.S.C. § 101 et seq.)

Debtor means Galen Robotics, Inc.

Deposit means the deposit described in ¶ 4.

Estate means the Bankruptcy Estate of the Debtor.

FDA means the U.S. Food and Drug Administration.

Purchased Assets means the assets of the Estate enumerated in Exhibit A hereto.

Purchase Price is the amount set forth in ¶ 4 to be paid by the Buyer to the Seller to purchase the Purchased Assets.

Sale Order means an Order entered by the Bankruptcy Court approving a Sale of the Purchased Assets to the Buyer.

**EXHIBIT 2**

## 1. Purchased Assets

Subject to entry of a Sale Order, Seller agrees to sell and Buyer agrees to buy the Purchased Assets as enumerated in Exhibit A hereto and incorporated herein by reference, free and clear of all liens and encumbrances pursuant to Code § 363(f).

## 2. Excluded Assets

All property of the Estate not expressly enumerated in Exhibit A are excluded from the sale, including cash, accounts receivable, causes of action, avoidance claims, tax refunds, and any insurance proceeds for pre-closing events.

## 3. No Assumed Liabilities

Buyer assumes NO liabilities of the Debtor or the Estate. All other liabilities remain with the Estate.

## 4. Purchase Price

(a) The total purchase price is $105,000 (one hundred five thousand dollars).

(b) Buyer has deposited the sum of $10,000 (ten thousand dollars) with Seller, to be held in a non-interest-bearing account pending entry of the Sale Order. The Deposit is fully refundable as provided in subsection (c) below and shall be applied toward the Purchase Price at Closing.

(c) In the event the Bankruptcy Court does not approve this Agreement, and Buyer is not otherwise in default hereunder, Seller shall refund the Deposit to Buyer in full within five (5) business days of the entry of an order denying or declining to approve the sale, without deduction or offset of any kind.

## 5. Bankruptcy Court Approval

This Agreement is subject to approval by the Bankruptcy Court which Seller will promptly seek. Buyer understands it may be required to provide verification of funds as required by the Bankruptcy Court in order to facilitate the sale process, and agrees to cooperate and respond expeditiously to Seller's request therefor. Buyer shall request that the Bankruptcy Court waive the 14-day stay under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure to permit immediate closing, and Seller shall reasonably support and not oppose such request.

## 6. Closing

Closing shall occur as soon as reasonably practicable following entry of a final Sale Order, and Buyer shall be prepared to close immediately upon entry of the Sale Order if the stay under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure is waived. Seller shall deliver a Bill of Sale and copy of the Sale Order to Buyer. Buyer shall deliver the balance of the Purchase Price.

Buyer is solely responsible for securing access to and possession of the Purchased Assets following Closing; Seller's sole obligation in this regard is to provide the Bill of Sale and, if requested by Buyer, to confirm Buyer's acquisition and ownership of the Purchased Assets to third parties. Buyer shall bear all costs and expenses associated with the acquisition, transfer, and delivery of the Purchased Assets, including any third-party transfer fees, registration fees, or similar charges.

## 7. As-Is / Where-Is

Seller is making no disclosures regarding the Purchased Assets. Buyer has had an opportunity to investigate and/or inspect the Purchased Assets and acknowledges that the Purchased Assets are being sold AS IS, WHERE IS, with all faults and defects, whether known or unknown. Seller makes no representations or warranties whatsoever, express or implied, including, but not limited to, any representations regarding: (a) the validity, transferability, enforceability, or current regulatory status of any FDA approval, clearance, or authorization included in the Purchased Assets; (b) the condition, functionality, compatibility, fitness for any particular use or purpose, or merchantability of any equipment, hardware, or software included in the Purchased Assets; (c) the accuracy, completeness, integrity, usability, or regulatory acceptability of any data, records, clinical submissions, or documentation included in the Purchased Assets; or (d) whether any of the Purchased Assets comply with applicable federal, state, or local laws, regulations, or agency requirements, including but not limited to those of the FDA.

To the extent present and available at Closing, the sale includes all tangible and intangible assets associated with or related to the Purchased Assets. All such assets are included in the sale to the extent they exist and are available at Closing, without representation or warranty as to their existence, completeness, or condition.

## 8. Governing Law / Jurisdiction

This Agreement is governed by the Bankruptcy Code and the laws of Maryland. The Bankruptcy Court has exclusive jurisdiction over any disputes arising hereunder.

## 9. Regulatory Cooperation

Buyer represents that the FDA-assigned De Novo submission number DEN220047 relates to a De Novo clearance held by the Estate. Seller shall cooperate with Buyer post-closing by executing any documents, authorizations, or certifications reasonably required to support Buyer's registration as the new De Novo authorization holder with the FDA, including but not limited to letters of authorization and transfer confirmations. If original submission documents cannot be located, Seller shall cooperate with any Freedom of Information Act request Buyer submits to the FDA to obtain them. Buyer acknowledges that post-closing FDA establishment registration, device listing, and GUDID updates are Buyer's sole responsibility.

## 10. FDA Transferability; Buyer's Regulatory Responsibility

Buyer acknowledges and agrees that certain FDA approvals, clearances, or authorizations included in the Purchased Assets may be device-specific or holder-specific and may not be freely transferable without prior notice to, or approval from, the FDA. Seller makes no representation or warranty that any such approval, clearance, or authorization is transferable. From and after Closing, it shall be the sole responsibility of Buyer to determine the transferability of any regulatory approval or authorization included in the Purchased Assets and to bear all costs associated therewith. Buyer's obligation to close shall not be conditioned upon the transferability of any regulatory approval or authorization.

## 11. Third-Party Software Licenses

Buyer acknowledges and agrees that certain software, firmware, algorithms, or technology included in or associated with the Purchased Assets may incorporate or be subject to third-party licenses that Seller may lack the authority to convey or assign. Buyer assumes sole responsibility for identifying any third-party licensed components within the Purchased Assets and obtaining any consents or assignments required for continued use.

## 12. Data Privacy; Assumption of Compliance Obligations

Buyer acknowledges that certain data included in the Purchased Assets may constitute protected health information subject to HIPAA or other applicable laws. From and after Closing, Buyer shall assume sole and exclusive responsibility for compliance with all applicable laws governing the use, storage, transfer, disclosure, and protection of any data acquired as part of the Purchased Assets. Buyer shall indemnify and hold harmless the bankruptcy estate, the Trustee in his official and individual capacities, and all professionals retained by the estate, from and against any claims arising out of or related to Buyer's use or mishandling of any data acquired pursuant to this sale.

## 13. Binding Effect of Bankruptcy Court Orders

The parties hereto shall be bound by any orders, procedures, directives, and instructions imposed by the Bankruptcy Court relative to this Agreement or the Purchased Assets. All disputes arising out of or related to this Agreement shall be subject to resolution exclusively in the Bankruptcy Court.

## 14. General Provisions

(a) Entire Agreement. This Agreement, together with Exhibit A, constitutes the entire agreement between the Parties on this subject and supersedes all prior agreements, representations, and negotiations.

(b) Amendments. This Agreement may not be varied except by a written instrument executed by both Parties.

(c) Severability. If any provision is determined to be invalid or unenforceable, the remainder shall remain in full force and effect.

(d) Counterparts and Electronic Signatures. This Agreement may be executed in counterparts. Signatures delivered electronically or by PDF shall be deemed effective.

(e) Representations and Warranties of the Parties. Each Party represents that it has all necessary authority to enter into this Agreement, has fully read and understands its terms, has had the opportunity to consult with counsel, and is entering into this Agreement freely and voluntarily.

(f) Attorneys' Fees. In the event of any legal proceeding arising out of or under this Agreement, the prevailing party shall be entitled to an award of all reasonable attorneys' fees and costs, unless otherwise ordered by the Bankruptcy Court.

## SIGNATURES

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**SELLER:**

**Signature:** _____

**Printed Name:** Zvi Guttman, Trustee

**Date:** _____

**BUYER:** Madison Lane Ventures LLC

**Signature:** _____

**Printed Name:** Bruce Lichorowic

**Title:** Managing Member

**Date:** ____6/5/26_____

**EXHIBIT A**

**SCHEDULE OF PURCHASED ASSETS**

Debtor: Galen Robotics Inc. – Bankruptcy Case No. 25-18408

The following assets constitute the Purchased Assets as defined in the Asset Purchase Agreement. This schedule is intended to be construed broadly. All assets are sold "as is, where is." Assets are included whether known or unknown to the Trustee as of the Closing Date. Any asset discovered after Closing that reasonably relates to the Company's products, technology, trade secrets, intellectual property, or regulatory status shall be deemed a Purchased Asset and subject to the Sale Order.

**1. Intellectual Property**

All trademarks, trade names, service marks, logos, and brand identifiers; all issued patents and pending patent applications; all copyrights in any work product; all trade secrets and proprietary know-how; domain names and social media handles. Includes all filings, prosecution history, and correspondence with USPTO or foreign patent offices.

**2. Regulatory Assets**

All FDA submissions and clearances including the FDA De Novo clearance DEN220047 for the Galen ES Robotic Surgical Assistant Platform, all correspondence, predicate device records, and substantial equivalence documentation; all IDE records; CE mark technical files and any other international regulatory filings; all records necessary to maintain, transfer, or re-submit any regulatory clearance or approval.

**3. Technical Documentation**

Design History File (DHF); Device Master Record (DMR); Device History Records (DHRs); all design specifications, drawings, and schematics; bill of materials (BOM); V&V records; risk management files; QMS documentation, SOPs, and work instructions; biocompatibility, sterilization validation, and all other test and certification records. Includes all versions and revisions, electronic and hard copy, wherever stored.

**4. Software & Firmware**

All source code, object code, firmware, and embedded software; all version history and repositories; build tools, scripts, and dependencies; software documentation and architecture records; all credentials, keys, and access tokens for any repository, CI/CD pipeline, or development environment. Includes all GitHub/GitLab/Bitbucket repos, cloud development environments, and any code stored on personal devices or accounts.

## 5. CAD & Design Files

All CAD files, 3D models, assemblies, drawings, and related design data in any format (SolidWorks, CATIA, Fusion 360, AutoCAD, STL, STEP, IGES, or other); all simulation and FEA files; all related design exchange files and exports. Includes all versions, iterations, and archived files, wherever stored.

## 6. Physical Assets

All prototypes (functional and non-functional, at any stage of development); all pre-production and production units; all test fixtures, jigs, molds, tooling, and specialized test equipment; all components, sub-assemblies, and raw inventory; all packaging and labeling stock.

## 7. Data & Records

All clinical, cadaver, animal, and bench test data; all lab notebooks and experimental records; all supplier records, approved vendor lists (AVL), and vendor agreements; all customer, distributor, and partner agreements or letters of intent; all IRB approvals and related records. Includes data stored in any format, electronic, paper, or otherwise.

## 8. Accounts & Credentials

All cloud storage accounts (Google Drive, Dropbox, OneDrive, AWS S3, etc.); all collaboration and communication accounts (Slack, Teams, Notion, Confluence, Jira, etc.); all email accounts and archives associated with company domains; all SaaS platform accounts associated with development, QMS, or regulatory activities. Includes all login credentials, recovery codes, and administrative access.

## 9. Goodwill & Ancillary Rights

All goodwill associated with the foregoing assets and the Company's products; all rights to the product name(s) and brand; any other assets reasonably associated with the design, development, manufacture, regulatory clearance, or commercialization of the Company's products, whether or not specifically identified herein. This category is intentionally broad.

**Trustee / Seller:** _____

**Date:** _____

**Buyer:** Madison Lane Ventures LLC, by Bruce Lichorowic, Managing Member

**Date:** _____